UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Eric Michael Sorenson,                                    No. 14-cv-4193 (ADM/LIB)

             Plaintiff,

v.

Minnesota Department of Human Services;
Minnesota Sex Offender Program; Lucinda
Jesson; David Bornus; Nancy Johnston; Kevin
Moser; 2011-Present MSOP-ML's policy and
Compliance Director(s) and Committee(s)
("Doe No. 1"); 2011-2012 Plaintiff's Unit 1-
EPrimary Therapist(s) ("Doe No. 2"); 2011-
2012 MSOP-ML's Unit 1-E Unit Director(s)
("Doe No. 3"); 2011-2012 MSOP-ML's Unit
1-E Clinical Supervisor(s) ("Doe No. 4");
2011-2014 MSOP-ML's Unit 1-E Clinical       **REPORT AND**
Team ("Doe No. 5"); 2011-Present MSOP-       **RECOMMENDATION**
ML's Roommate Placement Committee and Its
Members ("Doe No. 6"); 2011-2012 MSOP-
ML's Unit 1-E Unit Staff ("Doe No. 7"); 2011-
2012 MSOP-ML's Unit 1-E Unit Lead(s)
("Doe No. 8"); 2011-Present MSOP-ML's OSI
Department and Its Employees ("Doe No. 9");
2012-Present Unit 1-D Primary Therapist(s)
for Plaintiff ("Doe No. 10"); 2012-Present
MSOP-ML's Unit 1-D Unit Director(s)
("Doe No. 11"); 2012-Present 1-D Clinical
Supervisor(s) ("Doe No. 12"); 2012-Present
MSOP-ML's Unit 1-D Clinical Team(s) ("Doe
No. 13"); 2012-Present MSOP-ML's Complex
"A" and "B" Team Squad Members ("Doe
No.14"); 2011-Present MSOP-ML's Health
Services Department and Its Employees ("Doe
No. 15"); 2011-2012 MSOP-ML Transport
Officers/Staff ("Doe No. 16"); Marie Skalko;
Mike Olson; David Paulson; 2011-Present
MSOP-ML's Mental Health Department and
Its Employees ("Doe No. 19"); MSOP-Ml's
Behavioral Expectations Unit and Its
Employees ("Doe No. 20"); 2012-Present
CORE Group Co-Facilitator for Plaintiff at the

MSOP-ML Facility ("Doe No. 21"); 2012-
Present MSOP-ML's Unit 1-D Unit Staff
("Doe No. 22"); and Any Other Jane/John
Doe's Whose True Names Are Not Currently
Known to the Plaintiff, Sued in Their Official,
and Where Applicable, Individual Capacities;

      Defendants.

LEO I. BRISBOIS, United States Magistrate Judge

## INTRODUCTION

This matter is before the Court on Eric Michael Sorenson, Plaintiff's, Application to Proceed in District Court Without Prepaying Fees or Costs (Doc. No. 2), by which he seeks to proceed *in forma pauperis* ("IFP"), pursuant to 28 U.S.C. § 1915(a)(1).  When a litigant commences an action without prepaying the necessary filing fee, the claims asserted in that action are subject to initial screening, and potential dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B), if the Court determines that the action fails to state a claim on which relief may be granted.  The Court has conducted that initial screening and recommends, pursuant to 28 U.S.C. § 636 and Local Rule 72.1, that the Complaint be dismissed because it fails to state a claim for which relief may be granted.

## BACKGROUND

Plaintiff is a civilly committed detainee at the Minnesota Sex Offender Program's facility located in Moose Lake, Minnesota ("MSOP").  He brings this action against thirty separate Defendants, twenty of whom he has identified as "John Doe" Defendants.  His 106-page Complaint contains 282 separate paragraphs.  This lengthy recitation of Plaintiff's claims arises out of two separate incidents of assault alleged to have occurred during Plaintiff's civil commitment at MSOP.  Essentially, Plaintiff alleges that several Defendants failed to protect him

2

from a sexual assault by another civilly committed MSOP detainee, and he alleges that various Defendants failed to protect him from a physical assault by another MSOP detainee. Plaintiff also asserts that various Defendants failed to provide him with adequate medical care following those two assaults. He claims that certain Defendants failed to provide him with constitutionally required procedural guarantees during a disciplinary hearing. Further, he asserts that certain Defendants retaliated against him for exercising his First Amendment rights.

This is not the first time Plaintiff has attempted to bring the same claims he now asserts here. Plaintiff previously filed a separate action against numerous defendants (some of whom he has named in this case as well). After that case wound its way through a complex procedural history, this Court recommended that Plaintiff's claims be dismissed. *Sorenson v. Minn. Dep't of Corr., et al.*, Civil No. 13-2958 (ADM/LIB), Doc. No. 153 (D. Minn. July 31, 2014). Aside from certain claims for which this Court found there was no jurisdiction, Plaintiff failed to provide the historical factual assertions necessary to state a claim relating to the two assaults, the medical care he received after he was assaulted, and the complaints he has about disciplinary proceedings at MSOP. *Id.*, Doc. No. 153 ("July 31, 2014 Report and Recommendation"). The District Court initially adopted the July 31, 2014 Report and Recommendation and later issued an Amended Order indicating that a single claim remained for consideration. *Id.*, Doc. Nos. 155, 159. That case is still pending in this District on a single claim, which is not a part of this new case. Before the District Court adopted the July 31, 2014 Report and Recommendation in Plaintiff's other lawsuit, Plaintiff filed a Notice of Partial Voluntary Dismissal on August 8, 2014. *Id.*, Doc. No. 154. He purported to withdraw, without prejudice, all of the claims he asserted in his pleadings except the single claim that remains and is proceeding in that separate case. *Id.*, Doc. No. 154. In other words, Plaintiff attempted to keep alive the claims that he has

now made a part of this new lawsuit. *See Ventura-Vera v. Dewitt*, 417 Fed. App'x 591, 591-92 (8th Cir. 2011) (construing a *pro se* plaintiff's "motion to dismiss" filed before any defendant answered the complaint as a notice of voluntary dismissal and concluding that certain claims referred to in the "motion" should have been dismissed without prejudice under Fed. R. Civ. P. 41(a)(1)(A)-(B)); *see also Harvey Specialty & Supply, Inc. v. Anson Flowline Equip. Inc.*, 434 F.3d 320 (5th Cir. 2005) (explaining that the effect of a Rule 41(a)(1) notice of dismissal filed before the defendant has filed either an answer or a motion for summary judgment is that "the plaintiff is free to return to the dismissing court or other courts at a later date with the same claim") (citing *Semtek Int'l v. Lockheed Martin Corp.*, 531 U.S. 497, 505-06 (2001) (explaining the meaning of "dismissal without prejudice" under Rule 41(a))).

In his new Complaint (Doc. No. 1, ("Compl.")), Plaintiff asserts ten causes of action. Stated generally, Plaintiff claims the following:

1. Defendants failed to protect the Plaintiff from a sexual assault (Compl. ¶¶ 217-23);

2. Defendants failed to protect the Plaintiff from a physical assault (Compl. ¶¶ 224-30);

3. Defendants failed to provide the Plaintiff with an STD test following a sexual assault by another civilly committed detainee (Compl. ¶¶ 236-46);

4. Defendants failed to provide the Plaintiff with adequate medical care following a physical assault by another civilly committed detainee (Compl. ¶¶ 247-53);

5. Defendants failed to provide the Plaintiff with adequate mental health care relating to the prescription of psychotropic medications (Compl. ¶¶ 254-58);

6. Defendants failed to provide the Plaintiff with adequate procedural protections during a disciplinary hearing (Compl. ¶¶ 260-66);

7. Defendants retaliated against Plaintiff for exercising his First Amendment rights (Compl. ¶¶ 268-71);

8. Defendants' treatment of Plaintiff shocks the conscience (Compl. ¶¶ 272-75);

9. Defendants intentionally inflicted emotional distress on Plaintiff (Compl. ¶¶ 277-79);

10. Defendants acted negligently toward Plaintiff (Compl. ¶¶ 280-82).

Causes of Action 1-8 are premised on alleged violations of Plaintiff's federal constitutional rights, and he brings those claims pursuant to 42 U.S.C. § 1983 (although he also purports to bring these claims under the Constitution of the State of Minnesota). Causes of Action 9 and 10 are premised on the common law of the State of Minnesota, and it appears he seeks this Court's consideration of those claims through its supplemental jurisdiction under 28 U.S.C. § 1367(a).

The Defendants in this action are various Minnesota state agencies and a collection of both identified and unidentified individuals employed by those agencies. Plaintiff asserts some of his claims against the Minnesota Department of Human Services ("MDHS"), which he alleges "directly employs the Defendants at the . . . MSOP facilities." (Compl. ¶ 6.) Plaintiff also alleges that MDHS implements policies that have deprived him of procedural protections during disciplinary hearings. (*Id.*) In addition, Plaintiff brings this action against the Minnesota Sex Offender Program (MSOP), which he alleges has the "primary purpose" of housing civilly committed sex offenders to treat sex offender issues. (*Id.* ¶ 7.) Plaintiff also asserts that MSOP implements the same policy that has deprived him of procedural protections during disciplinary proceedings. (*Id.*)

Plaintiff also names several individuals in his Complaint. Defendants Lucinda Jesson, David Bornus, Nancy Johnston, Kevin Moser, Marie Skalko, Mike Olson, and David Paulson, are all officials employed by the State of Minnesota who have various operational roles with MSOP. (Compl. ¶¶ 8-14.) According to the Complaint:

- Defendant Jesson is the Commissioner of MDHS and "is in charge of all policies, procedures, etc… passed and put into effect at the MSOP facilities in the State of Minnesota. Jesson is also in charge of employing the other Defendants within either the MDHS central office or the MSOP-ML facility" (*Id.* ¶ 8);

5

- David Bornus is employed by the State of Minnesota as an "Agency Policy Specialist" who helps implement MSOP policies, including a policy that prohibited Plaintiff from having an attorney or being able to cross-examine witnesses during a disciplinary hearing (*Id.* ¶ 9);

- Defendant Nancy Johnston is the Chief Executive Officer who implements MSOP policies, including the policy prohibiting Plaintiff from having counsel and being permitted to present witnesses at disciplinary hearings (*Id.* ¶ 10);

- Defendant Kevin Moser is the MSOP Moose Lake Facility Director, who is in charge of day to day operations of the MSOP facility and who implements MSOP policies, including the policy prohibiting Plaintiff from having counsel and being permitted to present witnesses at disciplinary hearings (*Id.* ¶ 11);

- Defendant Marie Skalko is a Health Services Department Admin for the MSOP facility in Moose Lake who oversees the Health Services Department at an administrative level and, Plaintiff asserts, failed to intervene despite knowing there was a risk Plaintiff would receive inadequate medical care by other "subordinate Defendants" (*Id.* ¶ 12);

- Defendant Mike Olson is the Supervisor of the Health Services Department for the MSOP facility in Moose Lake who oversees the operations of the Health Services Department at a "line level" and, Plaintiff asserts, failed to intervene despite knowing there was a risk that Plaintiff would receive inadequate medical care by other "subordinate Defendants" (*Id.* ¶ 13); and

- Defendant David Paulson is the Executive Director of the Health Services Department at the MSOP facility in Moose Lake and is responsible for the overall health care system for Minnesota's civilly committed individuals and, Plaintiff asserts, failed to intervene despite knowing that Plaintiff was receiving inadequate medical care.  (*Id.* ¶ 14.)

In addition to these seven individuals, Plaintiff has named twenty (20) "Doe" Defendants, each of which is either an individual, or a collection of individuals, who have various roles working for MSOP.  (*Id.* ¶¶ 15-35.)  These unidentified individuals or teams of individuals include committees charged with developing and implementing MSOP policies and procedures, committees responsible for roommate placements at MSOP's Moose Lake facility, therapists, directors of MSOP "living units" where Plaintiff was housed at various times, clinical teams, investigators regarding allegations of criminal activities at MSOP, and others.  (*See id.*)

**DISCUSSION**

I.     **Applicable Legal Standards**

As noted at the outset, under 28 U.S.C. § 1915(e)(2)(B), because Plaintiff seeks to proceed IFP in this case, his claims are subject to an initial screening.   Conducting that screening, this Court must determine whether this action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  *Id.*

Although federal courts must "view pro se pleadings liberally, such pleadings may not be merely conclusory:  the complaint must allege facts, which if true, state a claim as a matter of law." *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).  To state an actionable civil rights claim under 42 U.S.C. § 1983, as Plaintiff is attempting to do here, a complainant must allege a set of historical facts, which, if proven true, would demonstrate that the named defendant or defendants violated his federal constitutional rights while acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).  Furthermore, "[l]iability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights" protected by the Constitution.  *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *Speed v. Ramsey County*, 954 F. Supp. 1392, 1397 (D. Minn. 1997) (same).  In other words, civil rights claimants must plead facts showing the defendant's *personal* involvement in alleged constitutional wrongdoing. *Ellis v. Norris*, 179 F.3d 1078, 1079 (8th Cir. 1999); *see also Beck v. LaFleur*, 257 F.3d 764, 766 (8th Cir. 2001) (upholding summary dismissal of civil rights claims, because the plaintiff's complaint "failed to allege sufficient personal involvement by any of the defendants to support such a claim").  Thus, to state an actionable § 1983 claim, a complaint must set forth historical factual allegations showing what each named defendant allegedly did, or failed to do,

while acting under color of state law, which purportedly violated the plaintiff's federal constitutional rights.

## II.    Analysis

### A.    Plaintiff's Purported Claims under the Minnesota Constitution

In his Complaint, Plaintiff purports to bring several causes of action (Causes of Action 1-8) to obtain redress for alleged violations of the Minnesota Constitution.  (Compl. ¶¶ 222 (Cause of Action 1), 229 (Cause of Action 2), 245 (Cause of Action 3), 252 (Cause of Action 4), 257 (Cause of Action 5), 265 (Cause of Action 6), 270 (Cause of Action 7), 274 (Cause of Action 8).)  However, unlike 42 U.S.C. § 1983, which provides a private cause of action for violations of the United States Constitution, no such private cause of action exists for violations of the Minnesota Constitution.  *See Riehm v. Engelking*, No. 06-cv-293 (JRT/RLE), 2007 WL 37799, at *8 (D. Minn. Jan. 4, 2007).  This Court has previously recommended that these state constitutional claims be dismissed on grounds that there is no private cause of action for violations of Minnesota's constitution, and the District Court has adopted that recommendation.  *Sorenson v. Minn. Dep't of Human Svcs.* ("*Sorenson I*"), Civil No. 13-2958 (ADM/LIB), Doc. No. 153 at 20 n.5 (D. Minn. July 31, 2014) (recommending dismissal of Plaintiff's state constitutional claims), *adopted by id.*, Civil No. 13-2958 (ADM/LIB), Doc. No. 159 (D. Minn. Sept. 8, 2014).  There is no reason to treat those reasserted claims differently here.

In his Complaint, Plaintiff "admits" that there is no private cause of action to bring claims under the Minnesota Constitution, but he purports to "uphold his Minnesota Constitutional claims via the Fourteenth Amendment of the U.S. Constitution, as the Minnesota Constitution is indeed laws of the state and land, in which no persons shall be deprived of."  (*Id.* ¶ 2a. n.2.)  Plaintiff provides no support for this proposition.

Accordingly, this Court recommends that all of Plaintiff's state constitutional claims be dismissed with prejudice.

**B.     Allegations Relating to a Sexual Assault – "Cause of Action 1"**

The following allegations relate to Plaintiff's "failure to protect" claim in "Cause of Action 1" in the Complaint, which concerns several Defendants alleged failure to prevent Plaintiff from being sexually assaulted by another MSOP detainee.  Plaintiff alleges that a 2011 report regarding the MSOP and a report from Minnesota's Office of the Legislative Auditor put Defendants "as a whole" on notice that "there was a pervasive problem with assaultive and other aggressive behaviors within the MSOP-ML facility."  (Compl. ¶¶ 53-55.)  Plaintiff also asserts that since MSOP opened, Defendants Jesson, Bornus, Johnston, Moser, and Defendant Doe #1 required double bunking of all units within the MSOP facility in Moose Lake.  (Compl. ¶ 56.)  Pursuant to that policy, Defendant Doe #2 required Plaintiff to make a roommate request, which would have required him to move into a room with another committed individual named Jeremy Hammond (or "J.H."), which Plaintiff objected to because it was "publicly known [that Hammond has a] propensity for violence" including a "propensity for sexual assault on the Plaintiff."  (*Id.* ¶¶ 63-65.)  Specifically, Plaintiff alleges that Hammond was written up several times by staff for being disobedient, for assaulting other MSOP detainees, sexually assaulting other MSOP detainees, and that he made numerous threats regarding other detainees about assaulting the Plaintiff and others.  (*Id.* ¶ 65.)

Despite his protests, Plaintiff asserts that Defendant Doe #2, after meeting with Defendants Does #3, 4, 5, and 6, required him to move into a room with Hammond.  (Compl. ¶¶ 66-75.)  Once Plaintiff moved into Hammond's room, Plaintiff alleges that Hammond told him he was going to rape Plaintiff while he slept.  (*Id.* ¶ 76.)  At the first opportunity, Plaintiff

complained to Defendant Doe #8, that Hammond had threatened him and "violently grabbed the Plaintiff's crotch." (*Id.* ¶ 77.) Plaintiff alleges that Defendants Does #2-8 then met the following day to discuss Plaintiff's Complaint. (*Id.* ¶ 79.) Hammond admitted to Defendant Doe #2 that he grabbed Plaintiff' crotch and did not deny having threatened to rape Plaintiff. (*Id.* ¶ 80.)

Despite being informed of Hammond's threats, Defendant Doe #2 required Plaintiff to remain in the room with Hammond. (Compl. ¶ 81.) Plaintiff then notified Defendant Doe #7 and Defendant Moser about Hammond's threats, but Plaintiff was told that he had to remain in the room with Hammond. (*Id.* ¶¶ 81-82.) Defendant Moser allegedly told Plaintiff that "you just have to learn how to defend yourself so that you won't be sexually assaulted anymore." (*Id.* ¶ 83.) Shortly after this happened, Plaintiff asserts that Hammond sexually assaulted him. (*Id.* ¶ 84.) Plaintiff informed Defendant Doe #7 that Hammond had sexually assaulted him, and Defendant Doe #9 interviewed Plaintiff about the details of the assault. (*Id.* ¶¶ 85-86.)

After the assault, Hammond was transferred to another unit. (Compl. ¶ 87.) However, Defendants Does #2-9 and Moser eventually moved Hammond back to the same living unit as Plaintiff, which Plaintiff complained about to Defendants Does #2-5, 8, and 9, and Defendant Moser. (*Id.* ¶ 88-89.) Plaintiff asserts that Hammond continues to threaten Plaintiff as he has not been moved out of the living unit where Plaintiff stays at MSOP, despite Plaintiff's requests that he be relocated. (*Id.* ¶ 90.)

Based on these allegations, Plaintiff asserts that Defendants Does #2-9 and Defendant Moser were deliberately indifferent to a known risk that Plaintiff would likely be assaulted by Hammond. (*See* Compl. ¶¶ 217-20.) Plaintiff asserts that these Defendants thereby violated his rights under the Due Process Clause of the Fourteenth Amendment. (*Id.* ¶ 222.)

The Court construes this claim as an Eighth Amendment claim, made applicable against the states through the Due Process Clause of the Fourteenth Amendment.  The conditions of a detainee's confinement are subject to Eighth Amendment scrutiny, including those involuntarily committed to a state hospital as a patient.  *Revels v. Vincenz*, 382 F.3d 870, 874 (8th Cir. 2004). The Eighth Amendment prohibits the government from inflicting cruel and unusual punishments, and a prison official (or an employee at a state civil commitment facility) may violate the Eighth Amendment if he is deliberately indifferent to the need to protect an inmate from a substantial risk of harm from other inmates.  *Jackson v. Everett*, 140 F.3d 1149, 1151 (8th Cir. 1998).  To plead deliberate indifference, a plaintiff must show both: (1) that, when viewed objectively, the alleged deprivation of rights was sufficiently serious; and (2) that the defendant, subjectively, had the requisite "culpable state of mind."  *Irving v. Dormire*, 518 F.3d 441, 446 (8th Cir. 2008) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  The deprivation is sufficiently serious when the official's failure to protect results in the inmate being "incarcerated under conditions posing a substantial risk of serious harm."  *Id.*  An official is deliberately indifferent when he or she *actually knows* of the substantial risk and *fails to respond reasonably*.  *Id.* at 844-45.

In its prior opinion concerning this claim, this Court recommended it be dismissed because Plaintiff failed to demonstrate actual, subjective knowledge by any particular defendant of Plaintiff's risk of an objectively serious deprivation of rights.  *Sorenson I*, Civil No. 13-2958 (ADM/LIB), Doc. No. 153 at 23-24 (D. Minn. July 31, 2014).  This Court explained that Plaintiff alleged that he reported Hammond's threats to several Doe Defendants and a number of individuals and told those Defendants "what Defendant Hammond had done in the past."  *Id.*, Doc. No. 153 at 23.  This Court reasoned that Plaintiff's allegations were conclusory and lacked any specificity sufficient to allow the Court to conclude that "a collective of individual State

Defendants were informed of the alleged risk Hammond posed to Plaintiff and knew of Hammond's unspecified 'past behavior[.]'" *Id.* at 24.  Further, the Court noted that Plaintiff's vague and conclusory allegations were merely an attempt to avoid a "major pitfall of [his] original Complaint in which Plaintiff generically and conclusorily attribute[d] all alleged constitutional violations to the State Defendants as a collective group." *Id.*

Here, Plaintiff has again attempted to remedy the shortcomings of his previously filed complaints regarding this claim.  For example, Plaintiff attempts to provide context to his prior allegations concerning Hammond's past behavior.  He explains that Hammond has been written up on several occasions for disobedience, assaulting other clients, and sexually assaulting one other inmate.  (Compl. ¶ 65.)  He also asserts that Hammond "made public statements to staff, Defendant Doe #2, and other clients" that he did not care about getting written up, and that he has "on information and belief" engaged in "rule breaking behaviors."  (*Id.*)  Further, Plaintiff alleges that before he was assaulted he informed Defendant Moser that Hammond had threatened to sexually assault him and Moser essentially told Plaintiff that he would have to "defend himself."  (*Id.* ¶ 83.)

This Court concludes that Plaintiff's allegations regarding the information he provided to Moser and Doe Defendants #2-9 are still too vague and conclusory to state a claim for deliberate indifference to a serious risk of harm.  Although he claims to have told Moser that Hammond threatened him, he has not alleged facts from which this Court could draw the inference that Moser had the actual, subjective belief that Hammond posed a serious risk of sexually assaulting Plaintiff.[1]  With respect to the Doe Defendants, the Court notes that Plaintiff is still attempting to

---

[1]     In *Sorenson I*, this Court noted that Plaintiff's most specific allegation was that Hammond self-reported an incident of inappropriate sexual contact with Plaintiff in the presence of a Doe Defendant.  *Sorenson I*, Civil No. 13-2958 (ADM/LIB), Doc. No. 153 at 24-25.

pursue these claims against a collective of individuals without specifying how each individual defendant was involved in the alleged deprivation of his constitutional rights. Plaintiff has had plenty of opportunities to explain how he informed these Doe Defendants #2-9 about Hammond's alleged threats, but his factual assertions in his new Complaint do not adequately explain what he did to inform any of these Doe Defendants of a risk that Hammond would sexually assault him. Thus, Plaintiff has failed to allege facts showing that these Defendants, Moser or the Doe Defendants #2-9, had the requisite culpable state of mind for a deliberate indifference claim to proceed against them.

Accordingly, this Court recommends that Cause of Action 1 be dismissed in its entirety with prejudice.

### C. Allegations Relating to Physical Assault – "Cause of Action 2"

In Cause of Action 2, Plaintiff alleges that several Defendants failed to protect him from a physical assault by another civilly committed MSOP detainee. Plaintiff alleges that while he was housed in MSOP living Unit 1-D, Defendant Doe #10 required him to submit a roommate request form pursuant to MSOP's policy of double-bunking all of its detainees. (Compl. ¶ 92.) According to Plaintiff, the only room available was that occupied by Joel Brown, who "has an extensive record of assault on other clients with the same or similar stature as Plaintiff." (*Id.* ¶ 93.) Plaintiff alleges that Brown assaulted another MSOP detainee known as "Blue" and placed him in the hospital and that Brown received multiple disciplinary reports for disorderly

---

However, this Court noted that "[w]hile this lone allegation may be sufficient to plead a single fact from which the single Doe Defendant may have been able to draw an inference of a substantial risk of serious harm, Plaintiff alleges no facts that would tend to suggest that the Doe Defendant did indeed draw the inference." *Id.*, Doc. No. 153 at 25. The same is true of Plaintiff's similar allegation that Hammond self-reported grabbing Plaintiff's crotch and Plaintiff's alleged conversation with Moser in this action. Plaintiff's allegations suggest that none of the named Defendants in this case actually drew the inference that Plaintiff was at risk of being sexually assaulted.

conduct.  (*Id.*)  Plaintiff states that he "protested" being moved into Brown's room in a conversation with Defendant Doe #10, who informed Plaintiff that he would be moved into the room "against his will."  (*Id.* ¶ 94.)  Doe Defendants #6, and 10-13 required Plaintiff to move into Brown's room despite his protests.  (*Id.* ¶¶ 95-98.)  After Plaintiff moved into Brown's room, Brown called Plaintiff derogatory names and swore at him and threatened to beat Plaintiff up.  (*Id.* ¶¶ 99-100.)

Plaintiff alleges that the day after Brown threatened him, he told Doe Defendants #11 and 13 that Brown threatened him, but they told Plaintiff there was nothing that could be done. (Compl. ¶ 101-02.)  Plaintiff asserts that he then spoke to Defendant Doe #10 and asked if he could have a room change, but Doe #10 told Plaintiff that he had better learn how to fight, while Doe Defendants #11 and 13 stated "I have read that that man [Brown] has kicked quite a few clients [sic] asses . . . good luck."  (*Id.*  ¶ 103.)  Plaintiff alleges that Doe #10 told plaintiff that she had heard Brown had assaulted other clients within MSOP and that Plaintiff "better learn to use his skills or fight."  (*Id.* ¶ 104.)  Plaintiff also asserts that he "contacted Defendant Moser, and Jesson, verbally and via informal communications respectively," and informed Moser that Brown threatened him and had a violent history of assaults in the past.  (*Id.* ¶¶ 106-07.)  Plaintiff states that each time he came into the room with Brown, Brown would threaten him, and that Doe Defendants #10 and 11, and Moser were made aware of the incidents.  (*Id.* ¶ 108 & n.12.)

Plaintiff stayed in the room with Brown, and eventually, on the night of the assault, Brown repeatedly punched Plaintiff over a disagreement regarding a "hotpot" that was in the room.  (Compl. ¶¶ 109-11.)  Defendant Doe #14 came to the room and Plaintiff informed Doe #14 that he had been assaulted.  (*Id.* ¶ 112.)  Later, Brown apparently admitted to Doe #14 that

he had assaulted Plaintiff.  (*Id.* ¶ 114.)  Nevertheless, Brown was allowed to move back into

MSOP living Unit 1-D about two days after this incident.  (*Id.* ¶ 115.)

As with "Cause of Action 1" relating to the assault by Hammond, this Court construes

this claim as alleging that certain Defendants violated Plaintiff's rights under the Eighth

Amendment of the United States Constitution.  Plaintiff alleges that Doe Defendants #10-15

knew that Brown had a history of being physically dangerous, and that they were deliberately

indifferent to the risk to Plaintiff's safety. (*See* Compl. ¶ 227.)  Similarly, Plaintiff asserts that he

told Defendant Moser of the risk of harm to the Plaintiff based on Brown's threats to beat

Plaintiff up, but Moser failed to protect Plaintiff from the assault.  (*Id.* ¶¶ 228-29.)

The conditions of a detainee's confinement are subject to Eighth Amendment scrutiny,

including those involuntarily committed to a state hospital as a patient.  *Revels v. Vincenz*, 382

F.3d 870, 874 (8th Cir. 2004).  The Eighth Amendment prohibits the government from inflicting

cruel and unusual punishments, and a prison official (or an employee at a state civil commitment

facility) may violate the Eighth Amendment if he is deliberately indifferent to the need to protect

an inmate from a substantial risk of harm from other inmates.  *Jackson v. Everett*, 140 F.3d 1149,

1151 (8th Cir. 1998).  To plead deliberate indifference, a plaintiff must show both: (1) that, when

viewed objectively, the alleged deprivation of rights was sufficiently serious; and (2) that the

defendant, subjectively, had the requisite "culpable state of mind."  *Irving v. Dormire*, 518 F.3d

441, 446 (8th Cir. 2008) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  The

deprivation is sufficiently serious when the official's failure to protect results in the inmate being

"incarcerated under conditions posing a substantial risk of serious harm."  *Id.*  An official is

deliberately indifferent when he or she *actually knows* of the substantial risk and *fails to respond*

*reasonably*.  *Id.* at 844-45.

In the July 31, 2014 Report and Recommendation in *Sorenson I*, this Court concluded that Plaintiff failed "to sufficiently allege actual, subjective knowledge by any State Defendant of Plaintiff's risk of an objectively serious deprivation of rights."   *Sorenson I*, Civil No. 13-2958 (ADM/LIB), Doc. No. 153 at 21-22.   This Court explained that "Plaintiff at best alleges that leading up to the alleged physical assault by . . . Brown, various individual State Defendants knew Plaintiff and Defendant Brown were not getting along and that staff-facilitated mediation session hand not been going 'according to plan.'"   *Id.*, Doc. No. 153 at 22.   Plaintiff failed to plead any facts concerning the nature of his disagreements with Brown and only alleged that he informed a collective of individual defendants that Brown had a general history of violent behavior, and this Court concluded that such allegations were too conclusory to state a claim that any defendant in *Sorenson I* had actual, subjective knowledge of an impending, serious risk of physical assault.   *Id.*

This Court concludes that the same problems with Plaintiff's allegations regarding the defendants' alleged failure to protect him from Brown's assault in *Sorenson I* are present in his current Complaint's recitation of Cause of Action 2 and the corresponding allegations in his Complaint.   Essentially, Plaintiff's claim here is the same.   He asserts that because there were MSOP related reports that generally discuss incidents of detainee assaults occurring at the Moose Lake facility, and because he informed Moser and Doe Defendants #10-15 about Brown's threatening behavior, those individuals must have had the actual, subjective knowledge that there was a serious risk Brown would assault Plaintiff.   This is hardly more specific than the nature of Plaintiff's allegations in *Sorenson I*.   Plaintiff refers to a single other incident in which Brown allegedly assaulted an inmate named "Blue," but does not provide any facts from which this Court could infer that any individual Defendant knew about that incident or that it involved any

facts making it substantially likely that Plaintiff was at risk. Plaintiff's generalized allegations that Brown had been the subject of discipline at MSOP likewise fails to indicate that there was Doe Defendants #10-15 and Moser subjectively believed that Brown would assault Plaintiff. As this Court concluded in *Sorenson I*, here Plaintiff "does not plead any individual State Defendant's subjective awareness of past predatory/assaultive behavior or any other specific facts that would even suggest their subjective knowledge of an impending assault by . . . Brown." *Sorenson I*, Civil No. 13-2958 (ADM/LIB), Doc. No. 153 at 23.

Accordingly, this Court recommends that Cause of Action 2 be dismissed in its entirety with prejudice for failure to state a claim.

### D. Allegations Relating to Medical Care Following the Two Assaults – "Cause of Action 3" and "Cause of Action 4"

In Cause of Action 3, Plaintiff alleges that several Defendants failed to provide him with needed medical care following the alleged sexual assault by Hammond. Plaintiff asserts that after he was assaulted by Hammond, he went to see a doctor at Mercy Hospital in Moose Lake, Minnesota. (Compl. ¶ 118.) This doctor performed a "rape kit" on Plaintiff and told Defendant Doe #16 to perform an STD test on Plaintiff. (*Id.* ¶ 119.) Plaintiff told Defendant Doe #15 sometime later that he was experiencing night sweats, weight loss, headaches, and bleeding, and he requested an STD test as recommended by the Mercy Hospital doctor. (*Id.* ¶ 122.) Plaintiff asserts that although Defendant Doe #15 agreed that he needed an STD test, Plaintiff waited almost a year before he got a response from the individuals comprising Defendant Doe #15. (*Id.* ¶ 123.) Plaintiff asserts that he complained to Defendants Skalko, Olson, Moser, "Lucinda" (Jesson), and Paulson that he was not given an STD test and was experiencing symptoms of HIV, but they "never ordered Defendants Doe No. 15 to provide the STD testing nor the psychological issues that the Plaintiff previously complained about on numerous occasions throughout various

times during the year long wait for STD testing." (*Id.* ¶¶ 124-25.)  Defendant Doe #15 allegedly refused to provide STD testing to Plaintiff and told him that they "aren't going to provide you STD testing because you have harassed us too much and we are quite frankly sick of you mother [expletive] trying to get health care out of us for free." (*Id.* ¶ 126.)  Plaintiff has not been provided an STD test or any other preventative matters stemming from the Mercy Hospital doctor's examination. (*Id.* ¶ 127.)

Based on these allegations, Plaintiff asserts that the following Defendants were deliberately indifferent to his serious medical needs by failing to provide him with STD testing: "Defendants Doe Nos. 15, 16, Skalko, Olson, Moser, Lucinda [Jesson], and Paulson." (Compl. ¶ 239.)  With respect to Defendant Doe #15, Plaintiff asserts that the failure to test was a result of animus toward Plaintiff because he had "bugged them too much" about STD testing and that Doe #15 ignored Plaintiff's symptoms. (*Id.* ¶¶ 241-42)  Defendant Doe #15 also is allegedly liable for "failure to act" on the Mercy Hospital doctor's orders regarding Plaintiff's need for STD testing. (*Id.* ¶ 243.)  Plaintiff asserts that the individual Defendants he alleges this claim against were "notified on repeated occasions that Plaintiff was not given the STD testing that [the Mercy Hospital doctor] ordered and that he was experiencing multiple symptoms of STD[s]." (*Id.* ¶ 244.)  Having been informed, these individual Defendants "failed to remedy the fact of the failure of Defendants Doe No. 15 failure to provide the STD testing." (*Id.*)  Plaintiff asserts these claims under the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution. (*Id.* ¶ 245.)

Plaintiff's other deliberate indifference claim relating to allegedly inadequate medical care appears in "Cause of Action 4," in which Plaintiff alleges that several Defendants were indifferent to his medical needs after he was physically assaulted by Brown.  Plaintiff alleges that

from 2012 through the present Doe Defendant #15 "came to see the Plaintiff stemming from a brutal physical assault on the Plaintiff perpetrated by [Brown.]"  (Compl. ¶ 129.)  Plaintiff asserts that he exhibited symptoms of having a concussion, which Doe #15 "specifically commented" about when examining Plaintiff.  (*Id.* ¶ 130.)  Plaintiff alleges that Doe #15 stated that Plaintiff would be prescribed Aspirin three times a day for pain, swelling, dizziness, fading in and out of consciousness, and blurred vision.  (*Id.* ¶ 131.)  Plaintiff also asserts that although it was a normal practice for someone in his position to have been the subject of an hourly "wellness check" throughout the night following the assault, no such check was performed.  (*Id.* ¶¶ 131-32.)  Plaintiff alleges that members of MSOP's "staff" told him they did not "feel like it" when he asked why the wellness checks had not been performed.  (*Id.* ¶ 133.)  He also states that Doe #15 refused to provide him Aspirin when he went to the "pill window."  (*Id.* ¶¶ 134-36.)  Plaintiff states that he "immediately notified Defendants Skalko, Olson, Moser, Lucinda [Jesson], and Paulson, via client medical request and verbally, that his prescribed treatment of wellness checks the night of the Assault and the doses of Aspirin were not being provided[.]"  (*Id.* ¶ 136.)  However, these individual Defendants did not respond to his medical request.  (*Id.*)  Plaintiff states that he has never received any of the prescribed Aspirin or any wellness checks.  (*Id.* ¶ 137.)

This Court also applies the Eighth Amendment deliberate indifference standard of review to claims such as "Cause of Action 3" and "Cause of Action 4" in Plaintiff's Complaint.  Any "deliberate indifference to serious medical needs of prisoners" constitutes cruel and unusual punishment and, therefore, violates the Eighth Amendment "because it constitutes the unnecessary and wanton infliction of pain contrary to contemporary standards of decency." *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (quotations and citations omitted).

To demonstrate the "deliberate indifference" necessary to sufficiently plead an Eighth Amendment violation, a plaintiff must demonstrate (1) that he had an objectively severe medical need, and (2) that prison officials knew of, but deliberately disregarded that need. *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000). In alleging deliberate indifference, Plaintiff must demonstrate "more than negligence, more even than gross negligence . . . ." *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). "Deliberate indifference is akin to criminal recklessness." *Drake v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006). "Specifically, the prisoner must show both (1) that a prison official had actual knowledge that the prisoner's medical condition created a substantial risk of serious harm to the prisoner's health, and (2) that the prison official failed to act reasonably to abate that risk." *Baez v. Rosemack*, No. 09-cv-2121 (RHK/LIB), 2011 U.S. Dist. LEXIS 103513, at *13 (D. Minn. Aug. 9, 2011) (Brisbois, M.J.) (citing *Coleman v. Rahija*, 114 F.3d 778, 785 (8thCir. 1997)). "[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). "As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment." *Id.*

This Court addressed Plaintiff's claims regarding failure to provide medical care following the two assaults in its July 31, 2014 Report and Recommendation in *Sorenson I*, Civil No. 13-2958 (ADM/LIB), Doc. No. 153 at 29-32 (D. Minn. July 31, 2014). This Court ultimately recommended that both of these claims be dismissed because Plaintiff made generalized and conclusory allegations about the failure of unidentified Defendants to respond

appropriately to his post-assault symptoms and failure to provide STD testing.  *Id.*, Doc. No. 153 at 30-31.  This Court reasoned that Plaintiff failed to provide sufficient allegations showing that the named defendants had actual knowledge of an objectively serious health risk following either assault, and that he received adequate medical treatment following both incidents.  *Id.*, Doc. No. 153 at 31-32.  With respect to Plaintiff's claims regarding the defendants' failure in *Sorenson I* to provide STD testing, this Court noted that Plaintiff failed to allege that he sustained any actual injury that might have been remedied by the alleged STD testing.  *Id.*, Doc. No. 153 at 32.  The District Court adopted this Court's Report and Recommendation recommending that these claims be dismissed for failure to state a claim.

Nothing in Plaintiff's new Complaint in this action resolves the problems identified by this Court in *Sorenson I.*  Plaintiff's claims regarding inadequate medical care following the two assaults remain rife with conclusory and generalized statements about the named Defendants' alleged knowledge of Plaintiff's serious medical needs.  Just as in *Sorenson I*, following the assault by Brown, Plaintiff's allegations indicate that he received medical attention, and he is simply asserting here that he should have received a particular or requested course of medical treatment.  *See Sorenson I*, Civil No. 13-2958 (ADM/LIB), Doc. No. 153 at 32.  Plaintiff also fails to allege any facts from which it could be inferred that he suffered any actual injury as a result of not receiving wellness checks the night of the assault or Aspirin to treat his symptoms.  Similarly, Plaintiff has not fixed any of the shortcomings of his pleadings in *Sorenson I* with his new allegations regarding an alleged failure to provide him with STD testing after he was allegedly assaulted by Hammond.  As this Court observed in *Sorenson I*, Plaintiff has still not alleged any facts indicating that he actually suffered from a serious health risk, and his allegations indicate that he received medical attention at Mercy Hospital following Hammond's

sexual assault, and Plaintiff still does not allege any facts to suggest that he actually had an STD, or that he ultimately sustained any actual injury that might have been remedied by the alleged STD testing. *See Sorenson I*, Civil No. 13-2958 (ADM/LIB), Doc. No. 153 at 32.

Accordingly, this Court recommends that Plaintiff's claims in Cause of Action 3 and Cause of Action 4 be dismissed in their entirety with prejudice.

### E.  Allegations Concerning Mental Health Treatment – "Cause of Action 5"

In Cause of Action 5, Plaintiff alleges that he received "inadequate mental health" treatment between 2012 and 2013. (Compl. ¶¶ 140, 254-58.) He alleges that he saw Defendant Doe #19 for a mental health appointment following his assaults by Hammond and Brown and explained that he was experiencing stress as a result of those assaults. (*Id.* ¶¶ 140-41.) Doe #19 told Plaintiff that he could not just make Plaintiff's stress go away, but offered to give Plaintiff some medication to see if that would help. (*Id.* ¶ 142.) Doe #19 prescribed Plaintiff Prozac to treat his mental health issues. (*Id.* ¶¶ 143-44.) The Prozac caused Plaintiff to feel more angry, however, which caused Plaintiff to get "written up repeatedly for anger outbursts." (*Id.* ¶ 146.) Plaintiff told Doe #19 about the side effects (*id.* ¶ 147), and "also notified Defendants Moser, Skalko, Olson, Paulson, Johnston, and even Jesson" that the Prozac was causing him anger issues and could make him aggressive toward others (*id.* ¶ 148). Neither Doe #19 nor these other individual Defendants responded to Plaintiff's concerns promptly. (*Id.* ¶¶ 148-49.) Meanwhile, Plaintiff's anger as a side-effect of taking Prozac was causing him to be written up for disciplinary issues and was holding him back in treatment. (*Id.* ¶¶ 150-51.) Plaintiff alleges that Doe #19 acknowledged Plaintiff's side-effects, and knew that this was a possible outcome even before he prescribed the medication to Plaintiff. (*Id.* ¶ 151.) Doe #19 also refused to provide

Plaintiff a "signed document" indicating that Plaintiff was having mental health issues that Plaintiff could use to contest an impending disciplinary matter.  (*Id.* ¶¶ 152-53.)

Plaintiff characterizes Cause of Action 5 as another "deliberate indifference" claim. He asserts that Defendant Doe #19 prescribed Prozac to treat Plaintiff's stress, which caused Plaintiff to have mental anguish toward Brown, and in turn led to disciplinary action being taken against Plaintiff when he lashed out at Brown.  (*Id.* ¶ 255.)  Plaintiff also alleges that despite informing Defendants Moser, Skalko, Olson, Paulson, Johnston, and Jesson that Defendant Doe #19 failed to explain the side effects of Prozac to Plaintiff, which caused him to become enraged and led to disciplinary action being taken against him, "Defendants failed to act or intervene knowing they had the power and authority to do so."  (*Id.* ¶ 256.)  Essentially, Plaintiff asserts that these Defendants should have known that treating him with Prozac would cause him to have anger issues, which would in turn lead to him acting aggressively toward Brown and other detainees at MSOP.  And rather than intervening to either prescribe him a different medication or separate him completely from Brown, these Defendants did nothing, but eventually disciplined Plaintiff when he did, in fact, act aggressively toward other detainees.  (*See id.* ¶¶ 256-57.)

In *Sorenson I*, this Court also analyzed similar allegations to those regarding the prescription of Prozac in the context of a due process claim.  *See Sorenson I*, Civil No. 13-2958 (ADM/LIB), Doc. No. 153 at 27-28.  There, Plaintiff had alleged that the prescription of a psychotropic medication caused Plaintiff to enter a medically induced rage, which in turn led to him being disciplined for his behavior at the MSOP facility.  *Id.*, Doc. No. 153 at 27.  This Court concluded that Plaintiff failed to state a due process claim because he had failed to show the deprivation of any liberty or property interest.  *Id.*, Doc. No. 153 at 28.

Although it appears Plaintiff has now shifted the legal theories on which he attempts to recover for the allegedly improper treatment of his mental health issues with Prozac, this Court concludes that Plaintiff's new deliberate indifference claim in Cause of Action 5 should also be dismissed. The same Eighth Amendment standards this Court identified above in its discussion of Cause of Action 3 and Cause of Action 4 apply to Plaintiff's claim in Cause of Action 5. To adequately plead a claim that the identified Defendants were deliberately indifferent to his mental health needs, Plaintiff must "show both (1) that a prison official had actual knowledge that the prisoner's medical condition created a substantial risk of serious harm to the prisoner's health, and (2) that the prison official failed to act reasonably to abate that risk." *Baez v. Rosemack*, No. 09-cv-2121 (RHK/LIB), 2011 U.S. Dist. LEXIS 103513, at *13 (D. Minn. Aug. 9, 2011) (Brisbois, M.J.) (citing *Coleman v. Rahija*, 114 F.3d 778, 785 (8thCir. 1997)). "[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). "As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment." *Id.*

Plaintiff has failed to allege any facts to suggest that the Defendants he has identified failed to provide adequate mental health treatment. Plaintiff's allegations indicate that he sought out medical treatment relating to stress after he was assaulted, and MSOP provided him that treatment in the form of a prescription for Prozac. Although, according to Plaintiff's allegations, Doe #19 and the individual Defendants he identified were aware that anger could be a possible side effect of Plaintiff taking Prozac, Plaintiff's Complaint is devoid of factual content that could

permit an inference that these Defendants knew this would cause a substantial risk of harm to Plaintiff.  Plaintiff does not allege that any Defendant was aware of anything in Plaintiff's own medical history or in Prozac's known side effects that indicated taking Prozac posed a substantial risk to Plaintiff's health.  *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (explaining that a deliberate indifference claim requires a showing that a prison official is aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and that the official must also draw that inference).  Nor has Plaintiff alleged any facts that would lead this Court to conclude that any Defendant's involvement with the decision to treat Plaintiff with Prozac entailed a wanton intent to inflict pain that is necessary to state a claim under the Eighth Amendment for denial of proper medical care.  *See Wilson v. Seiter*, 501 U.S. 294, 299 (1991) (distinguishing between negligent conduct or errors made in good faith and treatment that involves wantonness in describing the type of behavior that amounts to a violation of a prisoner's Eighth Amendment rights).  In fact, Plaintiff makes no allegations about a risk to his *health* at all.  Instead, he alleges that there was a risk he would behave in a manner that resulted in violation of MSOP's behavioral rules, which could get him disciplined.  Even if such a risk were actionable under the Eighth Amendment, which this Court seriously doubts since deliberate indifference to medical needs claims require a showing that there is a substantial risk of serious harm to inmate health and safety, Plaintiff certainly has alleged no facts that would support an inference that there was an excessive risk he would be disciplined once he took Prozac.

Accordingly, this Court recommends that Cause of Action 5 be dismissed in its entirety with prejudice.

**F.      Allegations Concerning Absence of Procedural Protections During Disciplinary Proceedings – "Cause of Action 6"**

In Cause of Action 6, Plaintiff alleges that his procedural due process rights under the Fourteenth Amendment were violated during a disciplinary hearing at MSOP when he was prohibited from having counsel present at the disciplinary hearing, and was not permitted to cross-examine or present witnesses.  (Compl. ¶¶ 156-74, 260-66.)  Plaintiff asserts that based on MSOP Police No. 303.010 regarding "Client Behavioral Expectations" he is prohibited from having counsel at a disciplinary proceeding within MSOP or from calling or cross-examining witnesses.  (*See id.* ¶¶ 6, 170.)  Plaintiff asserts that after Doe #6 moved Brown back into Plaintiff's living unit at the MSOP facility in Moose Lake, Plaintiff protested against Brown's return in a state of medically induced anger.  (*Id.* ¶¶ 157-58.)  Plaintiff spoke to Doe #21 about the issue, and out of anger and fear brought on by the medication he was taking, Plaintiff commented that he would defend himself against Brown as self-defense if Brown tried to attack him again.  (*Id.* ¶ 159.)  Doe #21 refused to move Plaintiff to a different living area.  (*Id.*)  After Plaintiff discussed the problems Brown's presence caused with some of his fellow detainees, Defendant Doe #22 informed Plaintiff that he was receiving a "Major BER" (a disciplinary action) for threatening others.  (*Id.* ¶¶ 160-61.)  Plaintiff then received a hearing notice relating to this disciplinary action.  (*Id.* ¶ 162.)  Plaintiff asserts that the notice failed to list the provision of the disciplinary code he had violated and provided less than 24-hours notice prior to the hearing. (*Id.* ¶ 163.)  Plaintiff asked to have counsel present and to call Defendant Doe #19 to be present so that Plaintiff could question him regarding the anger issues he was experiencing as a result of his medication.  (*Id.* ¶¶ 167-68.)  Plaintiff was not allowed to call a witness or have counsel present, and Defendant Doe #20 issues discipline and restrictions on Plaintiff for a period of five days.  (*Id.* ¶ 169.)

Plaintiff asserts that forbidding him from calling a witness and having an attorney to represent him in his disciplinary proceeding violated his procedural due process rights.  (Compl. ¶¶ 261-66.)  Plaintiff asserts that Doe #20 and Defendant Moser failed to provide him with these necessary procedural protections. (*Id.* ¶ 265.)   Although he does not mention either MSOP or MDHS in his recitation of this Cause of Action, liberally construing his *pro se* allegations regarding those two Defendants (*see id.* ¶¶ 6-7), this Court believes that Plaintiff is asserting this procedural due process claim against MSOP and MDHS as well.

To the extent Plaintiff's claims against MSOP and MDHS seek damages for an alleged violation of his procedural due process rights, this Court concludes that MSOP and MDHS are immune from such claims.  The Eleventh Amendment prohibits an action for monetary damages, including under section 1983, against a state unless it has unequivocally consented to suit or Congress has abrogated the states' immunity for a particular federal cause of action.  *See Hadley v. North Ark. Comm. Tech. College*, 76 F.3d 1437, 1438 (8th Cir. 1996).

Accordingly, this Court recommends that all such damages claims against MSOP and MDHS be dismissed with prejudice.

In regard to his apparent procedural due process claims against the individual Defendants, the Court reviews a Fourteenth Amendment procedural due process claim in two steps.  *Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006).  First, the Court determines whether the plaintiff has alleged deprivation of a protected liberty or property interest.  *Id.* Protected liberty interests are found in the Due Process Clause itself, and they may also be created by the laws of the states.  *Id.*  If the plaintiff has a protected liberty or property interest, the Court determines "what process is due by balancing the specific interest that was affected . . . the likelihood that the [applicable procedures] would result in an erroneous deprivation,  . . . [and

the affected program's] interest in providing the process that it did, including the administrative costs and burdens of providing additional process." *Id.* (citing *Mathews v. Eldridge*, 424 U.S. 319, 332-35 (1976)).

"Neither the Supreme Court nor [the Eighth Circuit] has determined the extent to which the Constitution affords liberty interests to indefinitely committed dangerous persons under the *Matthews* balancing test." *Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006). Since Plaintiff has been civilly committed to state custody, his liberty interests are considerably less than those held by members of free society. *Id.* However, compared to a prison inmate, Plaintiff is entitled to "more considerate treatment and conditions of confinement." *Id.* (quoting *Youngblood v. Romeo*, 457 U.S. 307, 322 (1982). Nevertheless, reference to cases involving due process claims in the prison context will provide guidance in analyzing the due process claims of a civilly committed individual. In the prison context, for example, a change in the condition of confinement (such as Plaintiff's claim of being placed on "restriction status" (Compl. ¶ 169) following a disciplinary hearing) implicates a liberty interest only when the action creates deprivations which "work such major disruptions in a prisoner's environment and life that they present dramatic departures from the basic conditions and ordinary incidents of prison sentences." *Moorman v. Thalacker*, 83 F.3d 970, 972 (8th Cir. 1996).

Turning to any possible remaining injunctive claims by Plaintiff against MSOP and MDHS (if any exist), and his claims against Defendant Doe #20 and Defendant Moser, this Court concludes that all such claims should be dismissed because Plaintiff has failed to allege any facts from which it could be inferred that he has been deprived of a constitutionally protected liberty interest. The only deprivation Plaintiff refers to at all is that he was "provided with 5 days of Restriction Status 2 (RS2)" as a result of the disciplinary hearing. (Compl. ¶ 169.)

Plaintiff does not allege what this relatively short period of "restriction status" entailed and provides no information at all about the nature of the alleged deprivation at issue in this claim. He does not even contend that he was placed in segregated confinement or punitive isolation, which was the alleged liberty interest at issue in *Senty-Haugen*. *See* 462 F.3d at 886 (noting that the appellees conceded that placing the civilly committed plaintiff in isolation and restricting his contact with others deprived him of a liberty interest). Absent such necessary factual allegations here, the consequences of the disciplinary hearing Plaintiff refers to in his Complaint do not suggest any dramatic departure from the ordinary incidents of his civil commitment.

For the foregoing reasons, this Court recommends that Plaintiff's procedural due process claims in Cause of Action 6 be dismissed in their entirety with prejudice.

Plaintiff also references the Sixth Amendment in his Complaint. (Comp. ¶ 265.) As is relevant to Plaintiff's claim that he was entitled to have a lawyer represent him at the disciplinary hearing, by its terms, the Sixth Amendment right "to have the assistance of counsel for [the] defense" applies only to "criminal prosecutions." U.S. Const., amend. VI. In the context of prison disciplinary proceedings, the Supreme Court has explained that prison inmates do not have a right to consult with or be represented by either retained or appointed counsel during a prison disciplinary hearing. *Baxter v. Palmigiano*, 425 U.S. 308, 314-15 (1976) (citing *Wolff v. McDonnell*, 418 U.S. 539, 570 (1974)). Prison disciplinary hearings are not part of a criminal prosecution, and the Sixth Amendment right to counsel does not attach until the initiation of formal criminal prosecution by way of formal charge, preliminary hearing, indictment, information, or arraignment. *U.S. v. King*, 559 F.3d 810, 813-14 (8th Cir. 2009) (citing *Kirby v. Illinois*, 406 U.S. 682, 689 (1972)). Here, Plaintiff has sued only government officials and government agencies who have no responsibility for providing Plaintiff with counsel in a non-

criminal proceeding.  Accordingly, this Court also concludes that to the extent Plaintiff seeks to assert that his Sixth Amendment right to counsel was violated, Plaintiff's due process claim should be dismissed.[2]

### G.    Allegations Concerning First Amendment Retaliation – "Cause of Action 7"

In Cause of Action 7, Plaintiff alleges that certain Defendants violated his substantive due process rights by retaliating against him for exercising his free speech rights under the First Amendment.  (Compl. ¶¶ 268-71.)  On October 25, 2013, Plaintiff alleges that he noticed Brown had moved back to the living unit after he had assaulted Plaintiff.  (*Id.* ¶ 176.)  Plaintiff spoke to Defendant Doe #21 about his disagreement with having Brown moved back on the unit.  (*Id.* ¶¶ 177-78.)  Plaintiff asserted that if Brown remained in the same living unit as Plaintiff and attacked Plaintiff again, Plaintiff would have to use self defense.  (*Id.* ¶ 178.)  Doe #21 asked Plaintiff if he was threatening Brown, which Plaintiff denied.  (*Id.*)  However, later that day, Plaintiff was called to the Unit 1-D Staff Desk and Defendant Doe #22 instituted a disciplinary action against Plaintiff.  (*Id.* ¶ 179.)  Plaintiff asserts that shortly after he expressed his opinion (which he attributes to his anger while taking Prozac, *see id.* ¶ 180 (incorporating paragraphs relating to Prozac side effects)) about Brown's moving back to the same living unit where Plaintiff stayed at MSOP, he received the disciplinary sanction in retaliation.  (*Id.* ¶ 181.)

This Court previously addressed Plaintiff's First Amendment retaliation claim in *Sorenson I.*  Civil No. 13-2958 (ADM/LIB), Doc. No. 153 at 35-36.  There, this Court concluded that Plaintiff failed to allege any facts to suggest that any adverse action was motivated by

---

[2]    Plaintiff also references the Fifth Amendment in his Complaint (Compl. ¶ 265), but to the extent he alleges a Fifth Amendment right to counsel violation, the claim would fail because a plaintiff cannot maintain an action under § 1983 for violation of his Fifth Amendment rights unless compelled statements made without the benefit of counsel were used against him at a criminal trial.  *Chavez v. Martinez*, 538 U.S. 760, 767 (2003).  Plaintiff makes no such allegations here.

Plaintiff's protected conduct.  *Id.*  Instead, Plaintiff made the conclusory allegation that there was a causal connection between the alleged retaliatory actions and his own alleged exercise of constitutional rights.  *Id.*, Doc. No. 153 at 36.

"To establish a retaliation claim, a plaintiff must show: (1) he engaged in a protected activity; (2) a government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) the adverse action was motivated at least in part by the protected activity."  *Evenstad v. Herberg*, No. 12-cv-3179 (RHK/JJG), 2014 WL 107718, at *3 (D. Minn. Jan. 10, 2014) (citing *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)).  "Failure to satisfy any of the three elements results in the failure of the claim." *Evenstad*, 2014 WL 107718, at *3 (citing *Higdon v. Jackson*, 393 F.3d 1211, 1219 (11th Cir. 2004)). "[C]ivilly committed persons retain their First Amendment rights to exercise the freedom of speech and to seek redress of grievances[.]"  *Evenstad*, 2014 WL 107718, at *3.  In the prison context, courts have observed that prison officials are prohibited from "punish[ing] an inmate because he exercises his constitutional right of access to the courts."  *Sisneros v. Nix*, 95 F.3d 749, 751 (8th Cir. 1996).

Here, Plaintiff's reasserted First Amendment retaliation claim fares no better than it did in *Sorenson I*.  This Court concludes that plaintiff has not alleged any facts to suggest that the decision to institute disciplinary action against him for a suspected threat to another civilly committed MSOP detainee was motivated by Plaintiff's protected activity.

Because Plaintiff's allegations relating to his First Amendment claim in Cause of Action 7 fail to show any causal connection between protected First Amendment activity and an adverse action, this Court recommends that Cause of Action 7 be dismissed in its entirety with prejudice.

**H.     Allegations Concerning the Totality of Plaintiff's Conditions of Confinement – "Cause of Action 8"**

Plaintiff's last federal constitutional claim in Cause of Action 8 is that the totality of the circumstances of Plaintiff's confinement so shocks the conscience that his Fourteenth Amendment due process rights have been violated.  (Compl. ¶¶ 273-74.)   Plaintiff purports to incorporate the substantive allegations relating to his inability to obtain a lawyer or call witnesses at the disciplinary hearing into this Cause of Action.  (*Id.* ¶ 272 (incorporating by reference paragraphs 156-174 into Cause of Action 8).)  Plaintiff asserts this claim against the "respective Defendants as alleged herein" (*id.* ¶ 273), but does not specify which Defendants it is against whom he brings this claim.  Plaintiff's failure to specify any particular Defendant's conduct that he believes so shocks the conscience as to violated the Due Process clause of the Fourteenth Amendment is fatal to this § 1983 claim.  *Ellis v. Norris*, 179 F.3d 1078, 1079 (8th Cir. 1999) (civil rights claimants must plead facts showing the defendant's *personal* involvement in alleged constitutional wrongdoing); *see also Beck v. LaFleur*, 257 F.3d 764, 766 (8th Cir. 2001) (upholding summary dismissal of civil rights claims, because the plaintiff's complaint "failed to allege sufficient personal involvement by any of the defendants to support such a claim").

For that reason alone, this Court recommends that Plaintiff's Cause of Action 8 be dismissed in its entirety with prejudice.

Alternatively, this Court concludes that Plaintiff's allegations relating to how MSOP officials handled his disciplinary hearing are insufficient to state a substantive due process claim under a shocks-the-conscience test.  "So-called substantive due process prevents the government from engaging in conduct that shocks the conscience,  . . . or interferes with rights implicit in the concept of ordered liberty."  *United States v. Salerno*, 481 U.S. 739, 746 (1987) (quotations omitted).  The Eighth Circuit has noted that substantive due process violations are rare.  *Strutton*

*v. Meade*, 668 F.3d 549, 557 (8th Cir. 2012) ("Only in the rare situation . . . when state action is truly egregious and extraordinary will a substantive due process claim arise.").  In light of the fact that this Court previously concluded that Plaintiff has failed to allege that the disciplinary process even implicated a protected liberty interest under the Fourteenth Amendment's Due Process Clause, this Court further concludes that Plaintiff has failed to show that any Defendant in this case has engaged in conduct that is so egregious and extraordinary that it shocks the conscience.

Plaintiff's Cause of Action 8 should be dismissed.

## I.     Plaintiff's Intentional Infliction of Emotional Distress and Negligence Claims – "Cause of Action 9" and "Cause of Action 10"

Cause of Action 9 and Cause of Action 10 are Plaintiff's claims for, respectively, intentional infliction of emotional distress and negligence under Minnesota's state common law. (Compl. ¶¶ 277-82.)   Plaintiff asserts that all Defendants intentionally inflicted emotional distress on Plaintiff by failing to protect him from being assaulted by Hammond and Brown, failing to provide him adequate care, and denying due process to Plaintiff.  (*Id.* ¶¶ 277-79.) Plaintiff's negligence claim is virtually identical.  (*Id.* ¶¶ 280-82.)  These claims are before the Court under its supplemental jurisdiction to consider state law claims under 28 U.S.C. § 1367. However, because this Court has recommended that all of Plaintiff's federal constitutional claims brought under 42 U.S.C. § 1983 be dismissed, and there are no remaining federal claims against any Defendant in this action, it will further recommend that the District Court decline to exercise supplemental jurisdiction over these remaining state law claims.  28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a [supplemental state law claim] if . . .  the district court has dismissed all claims over which it has original jurisdiction.").

## III.    Conclusion

For all the foregoing reasons, this Court recommends that Plaintiff's Complaint be summarily dismissed for failure to state a claim under 28 U.S.C. § 1915(e)(2).

Finally, this Court notes and recommends that if Plaintiff attempts to voluntarily dismiss this claim as he did following this Court's July 31, 2014, Report and Recommendation in *Sorenson I*, that "notice of dismissal operates as an adjudication on the merits."  Fed. R. Civ. P. 41(a)(1)(B).  What this means is that Plaintiff cannot interminably reassert the claims this Court has recommended be dismissed by filing another notice of voluntary dismissal and later starting yet another lawsuit based on the same complaints he raised in this case and in *Sorenson I*.

### RECOMMENDATION

Based on the above, and on all the files and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.    Plaintiff's Application to Proceed Without Prepaying Fees or Costs (Doc. No. 2), be **DENIED**; and

2.    This action be summarily **DISMISSED** for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).


Date: December 19, 2014                          s/Leo I. Brisbois_____
                                                 Leo I. Brisbois
                                                 U.S. MAGISTRATE JUDGE


### N O T I C E

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by January 2, 2015**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections **by January 16, 2015**. Written

submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.